UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GNO Real Estate Holdings, LLC d/b/a Nola Living Realty, *Plaintiff,* | CIVIL ACTION NO.: 2:19-cv-01849 |
| | SECTION "D" |
| v. | JUDGE: VITTER |
| Uptown Nola Living Realty, LLC and Mohamad Saleh, *Defendants*. | DIVISION 5 |
| | MAGISTRATE JUDGE: NORTH |

**PRE-TRIAL ORDER**

**I. PRE-TRIAL CONFERENCE**

A pre-trial conference was held on February 12, 2012 at 9:00 a.m.

**II. APPEARANCES OF COUNSEL**

Ian C. Barras
Gregory D. Latham
Kent Barnett
Intellectual Property Consulting, LLC
334 Carondelet St., Suite B
New Orleans, Louisiana 70130
Telephone: (504) 322-7166
Facsimile: (504) 322-7184
ibarras@iplawconsulting.com
glatham@iplawconsulting.com
kbarnette@iplawconsulting.com
*Counsel for plaintiff, GNO Real Estate, LLC*

Eric Oliver Person
1539 Jackson Avenue, Suite 100
New Orleans, Louisiana 70130
Telephone: (504) 561-8612
Fax: (504) 561-8615
eric@eoplaw.net
*Counsel for defendants, Uptown NOLA living Realty, LLC and Mohamed Saleh*

## III. PARTIES

1. GNO Real Estate Holdings, LLC (hereinafter, "GNO"), doing business as NOLA Living Realty and NOLA Realty, is a Louisiana limited liability company with its principal place of business at 3841 Veterans Memorial Blvd. Suite 201, Metairie, Louisiana 70002.

2. Uptown NOLA Living Realty, LLC is a Louisiana limited liability company having a principal place of business at 5935 Magazine St., New Orleans, Louisiana 70115.

3. Mohamad Saleh is the Member/Manager of Uptown NOLA Living Realty, LLC. Mohamed Saleh is a full age resident of the State of Virginia, residing at 5131 Woodfield Drive, Centreville, Virginia

## IV. JURISDICTION

Neither personal nor subject matter jurisdiction is contested. This is an action for trademark infringement under the Lanham Act, 15 U.S.C. § 1051 et seq., injury to business reputation and trademark dilution under LA. REV. STAT. § 51:223.1, unfair trade practices under LA. REV. STAT. § 51:1401 et seq., including unfair competition and unfair or deceptive acts or practices in the conduct of trade and commerce under LA. REV. STAT. § 51:1405(A). This Court has jurisdiction over this action under 15 U.S.C. § 1121(a) and 28 U.S.C.§ 1331 (actions arising under the Lanham Act), 28 U.S.C. §§ 1338(a) and (b) (acts of Congress relating to trademarks, and unfair competition claims joined therewith), and 28 U.S.C. §1367(a) (supplemental jurisdiction over related actions arising under state law).

## V. PENDING OR CONTEMPLATED MOTIONS AND OTHER SPECIAL ISSUES

**Plaintiff**

a. Pending Motions

GNO's Motion for Partial Summary Judgment on Trademark Infringement (Rec. Doc. 29) was filed September 24, 2019 and is currently pending before the Court.

b. Contemplated Motions:

GNO's Omnibus Motion in Limine (on multiple issues) to be filed February 5, 2020.

**Defendant**

a. Pending Motions

Defendants' Motion to Compel (Rec. Doc. 69) was filed on January 24, 2020 and is currently pending before the Court. This motion is set for oral argument on February 12, 2020 before Magistrate Judge North.

b. Contemplated Motions: None

## VI. FACT SUMMARIES

a. GNO's Brief Summary of Material Facts

**1. Factual Background**

**i. GNO's Rights:** GNO, doing business as NOLA Living Realty and NOLA Realty, provides real estate marketing and sales services across the greater New Orleans metropolitan area using the trademarks "NOLA LIVING REALTY" and "NOLA REALTY" (the "NOLA LIVING REALTY Marks"). It is undisputed that GNO is the prior user, by many years, of the NOLA LIVING REALTY Marks.

GNO owns a U.S. Trademark Registration for the word mark NOLA REALTY (U.S.

Reg. No. 4,090,784) for "real estate brokerage" which has been used continuously since 2004 and is now incontestable pursuant to Sections 8 and 15 of the Lanham Act,[1] and also owns Louisiana Trademark Registration Book #62-2685 for the mark NOLA REALTY. GNO also owns the currently unregistered trademark NOLA LIVING REALTY, which GNO has used continuously in connection with its real estate sales and marketing services since 2014. GNO has filed applications with the USPTO to register its NOLA LIVING REALTY trademarks, and the USPTO has determined that GNO is entitled to registration of these marks.[2]

GNO uses the NOLA LIVING REALTY Marks to advertise and market its real estate sales and marketing services across a wide variety of media, including its own website, social media, yard signs, and websites that aggregate real estate listings provided by numerous brokerages. GNO has devoted substantial time, money and labor to the development, enhancement, expansion, advertisement, promotion and marketing of GNO's services and product lines in connection with NOLA LIVING REALTY MARKS.  Since 2014, the NOLA LIVING REALTY MARKS have been used in connection with the sale of hundreds of millions of dollars in real estate, increasing GNO's market share by more than four hundred fifty percent

---

[1]     When a mark becomes incontestable, registration of that mark constitutes "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce."  15 U.S.C. § 1115(b).

[2]     On August 7, 2019, GNO filed two federal applications to register its NOLA LIVING REALTY mark with the United States Patent and Trademark Office (USPTO) – namely, U.S. Federal Trademark App. Nos. 88/570,663 (logo) and 88/570,478 (standard character mark) (collectively, the NOLA LIVING REALTY Applications). Both NOLA LIVING REALTY Applications published on December 24, 2019, and the 30-day opposition period has now passed without any third-party Oppositions being filed. Applications only publish once the "examining attorney determines that the mark is entitled to registration on the Principal Register…." TMEP § 1502; see also 15 U.S.C. § 1062(a); 37 C.F.R. § 2.80. Further, the registration of a mark by the USPTO means that said mark is, by definition, "distinctive". See 15 U.S.C. § 1052. Thus, the decision by the Examiner to allow GNO's NOLA LIVING REALTY Applications to proceed to registration on the Principal Register further highlights the distinctive nature of GNO's NOLA LIVING REALTY marks and the strength of GNO's trademark rights.

(450%).

**ii. Uptown's Activities:** Defendant Uptown NOLA Living Realty, LLC ("Uptown") was formed on February 5, 2019, the same date on which Uptown claims to have first used the UPTOWN NOLA LIVING REALTY mark. Uptown uses the designation UPTOWN NOLA LIVING REALTY to advertise and market brokerage services for real estate located in the New Orleans metropolitan area via social media websites, such as Facebook, and other websites that aggregate real estate listings provided by numerous brokerages.

**2. Uptown Is Infringing GNO's Trademarks**

To recover on a claim of trademark infringement under the Lanham Act, a plaintiff must show that (1) it owns a protectable mark; (2) it is the senior user of the mark; and (3) the defendant's use of a confusingly similar mark that will result in a likelihood of confusion. *Union Nat. Bank of Texas, Laredo, Tex. v. Union Nat. Bank of Texas, Austin, Tex.*, 909 F.2d 839, 844 (5th Cir.1990). The test for infringement under the Lanham Act is the same whether the trademarks at issue are registered or unregistered. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.8 (5th Cir. 2010).

**i. GNO's Ownership Of The NOLA LIVING REALTY MARKS And Priority Are Not Genuinely In Dispute**

There can be no genuine dispute that GNO owns a United States Trademark Registration the word mark NOLA REALTY (U.S. Reg. No. 4,090,784) for "real estate brokerage" services. Federal registration of the mark is prima facie evidence of GNO's exclusive right to use the registered mark in connection with the services enumerated in the registration. 15 U.S.C. § 1115(a); *Amazing Spaces, Inc.*, 608 F.3d at 235 (5th Cir. 2010). Because the mark is now incontestable under 15 U.S.C. § 1065, GNO's federal registration is conclusive evidence that the NOLA REALTY mark is valid, protectible and owned by GNO, which has the exclusive right to

use the mark in connection with the services enumerated in the registration. 15 U.S.C. § 1115(b). GNO also owns the exclusive right to use the unregistered trademark NOLA LIVING REALTY, which GNO has used in connection with its real estate sales and marketing services since 2012. As noted above, GNO's NOLA LIVING REALTY Applications have been approved for publication and have now passed unopposed through the 30-day opposition period. GNO should receive federal trademark registrations for its NOLA LIVING REALTY marks (logo and standard character) in due course, at which time GNO will enjoy the legal presumptions associated with said registrations.

Nor can there be any dispute that GNO is the senior user with respect to both NOLA LIVING REALTY MARKS. Uptown did not use the UPTOWN NOLA LIVING REALTY designation until February 5, 2019, seven years after registration of the NOLA REALTY mark, which was first used in 2004, and four years after GNO began using NOLA LIVING REALTY. Thus, GNO owns protectible trademark rights in and is the senior user of the NOLA LIVING REALTY MARKS.

**ii. Uptown's Use Of UPTOWN NOLA LIVING REALTY Is Likely To Cause Confusion**

To satisfy the last element of its trademark infringement claim, GNO must show that Uptown's use of UPTOWN NOLA LIVING REALTY creates a likelihood of confusion. The test for determining likelihood of confusion in a trademark case involves evaluating the following list of non-exhaustive "digits of confusion": (1) the strength of the mark; (2) mark similarity; (3) product similarity; (4) identity of retail outlets and purchasers; (5) identity of advertising media; (6) defendant's intent; (7) and actual confusion; and (8) care exercised by potential purchasers. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009). None of these factors by itself is dispositive and a finding of likelihood of confusion does

not even require a positive finding on a majority of these factors. *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1988). In addition to the listed "digits of confusion," a court is free to consider other relevant factors in determining whether a likelihood of confusion exists. *Armco, Inc. v. Armco Burglar Alarm Co.*, 693 F.2d 1155, 1160-61 (5th Cir. 1982).

**a) The marks are nearly identical**

In comparing the similarity of word marks, courts look to the marks' similarity in sight, sound and meaning. *See, e.g., Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 234 (5th Cir. 2009). The only difference between GNO's NOLA LIVING REALTY MARKS and the UPTOWN NOLA LIVING REALTY designation used by Uptown is the word UPTOWN. Thus, the marks are nearly identical, and this digit weighs heavily in favor of finding a likelihood of confusion.

**b) The services are identical**

There is no dispute that GNO uses the NOLA LIVING REALTY MARKS in connection with real estate marketing and sales services. There is also no genuine dispute that Uptown uses the UPTOWN NOLA LIVING REALTY designation in connection with real estate marketing and sales services. The greater the similarity there exists between the goods and services, the greater the likelihood of confusion. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 229 (5th Cir. 2009). Because the services are identical, this digit strongly supports a finding of likelihood of confusion.

**c) The purchasers are identical**

Both GNO and Uptown provide real estate marketing and sales services to people buying and selling residential real estate in New Orleans. Because both the NOLA LIVING REALTY MARKS and the UPTOWN NOLA LIVING REALTY designation are used to market and

provide services to the same purchasers (i.e. buyers and sellers of residential real estate in New Orleans), this digit weighs heavily in favor of finding a likelihood of confusion.

**d) The advertising channels are identical**

Both GNO and Uptown use their respective marks to market their real estate listings through social media and internet websites that aggregate real estate listings. The use of identical advertising channels strongly supports a finding of likelihood of confusion.

**e) Uptown's intent to infringe should be inferred**

Where a defendant adopts an infringing mark with the intent of deriving benefit from the reputation of the plaintiff, that fact alone may be sufficient to justify the inference that there is confusing similarity. *See American Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 332 (5th Cir. 2008). The Fifth Circuit has held that, although proof of a defendant's intent is not required, "[i]f such intent can be shown . . . it may provide compelling evidence of a likelihood of confusion." *Id.* Moreover, impermissible intent may be inferred from the fact that a defendant plagiarized a trademark. *Sunbeam Prods. v. West Bend Co.*, 123 F.3d 246, 258 (5th Cir. 1997). "The use of similar or near-identical marks in the same field is strong evidence of an intent to capitalize on the goodwill of the marks' owners." *Abraham v. Alpha Chi Omega*, 796 F. Supp. 2d 837, 849 (N.D. Texas 2011).

As noted above, the NOLA LIVING REALTY MARKS had been used for at least four years prior to Uptown's first use of UPTOWN NOLA LIVING REALTY, which is nearly identical to the NOLA LIVING REALTY MARKS. Uptown uses UPTOWN NOLA LIVING REALTY to offer services that are identical to GNO's services targeting the same purchasers as GNO by using the same advertising and marketing channels that GNO uses. Accordingly, the Court can and should infer that Uptown intended to capitalize on the goodwill of GNO's NOLA

LIVING REALTY MARKS, which weighs heavily in favor of finding a likelihood of confusion

**f) GNO's marks are strong marks**

"The stronger the mark, the greater the protection it receives." *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 201 (5th Cir. 1998). A trademark's strength is determined by the quality of the mark and, more importantly, by the degree to which it is recognized in the marketplace. *American Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 330 (5th Cir. 2008). Marketplace recognition depends on "advertising, length of time in business, public recognition, and uniqueness." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1179 (9th Cir. 1988).

The NOLA REALTY mark's federal registration not only entitles the mark to a presumption of distinctiveness, but because the mark has attained incontestable status the registration also constitutes conclusive evidence that the mark is valid and protectible and that GNO has the exclusive right the use the mark. 15 U.S.C. § 1115(a) & (b). Furthermore, the mark's strength is evinced by the length and extent of its use over fifteen (15) years. *See Equibrand Corp. v. Reinsman Equestrian Prods.*, 2007 U.S. Dist. LEXIS 36229 at *16-17, 32 (N.D. Texas May 17, 2007) (stating that continuous use of a mark for ten years supported a finding that the mark had become distinctive). Similarly, GNO has devoted substantial time, money and labor to the development, enhancement, expansion, advertisement, promotion and marketing of GNO's services and product lines in connection with the NOLA LIVING REALTY mark resulting in hundreds of millions of dollars in real estate sales and an increase in market share of more than four hundred fifty percent (450%). Accordingly, GNO's NOLA LIVING REALTY MARKS are strong marks, and this digit weighs in favor of finding a likelihood of confusion.

**g) Actual confusion**

Evidence of actual confusion is not necessary to finding of likelihood of confusion, for purpose of determining whether trademark has been infringed. 15 U.S.C.A. § 1114(1); *see also Quantum Fitness Corp. v. Quantum LifeStyle Centers, L.L.C.*, 83 F.Supp.2d 810, 829 (S.D.Tex.1999). GNO does not have direct evidence of actual confusion, so this fact is neutral.

**h) Care exercised by potential purchasers**

Purchasers buying a new home exercise care with respect to the home, but not the real estate agent helping them to purchase said home. Thus, unless Uptown presents some empirical evidence regarding the care buyers and sellers of residential real estate use in selecting a real estate agent, the Court should treat this digit as neutral.

**i) "Digits of Confusion" indicate a likelihood of confusion**

Of the eight digits to be considered in the likelihood of confusion analysis, none weigh in Uptown's favor. Yet six digits weigh in GNO's favor, and four of those strongly support a finding of likelihood of confusion: the marks are nearly identical, the services are identical, the purchasers are identical, and the advertising channels are identical. The remaining two digits are neutral (actual confusion and care exercised by purchasers). Thus, it is clear that a likelihood of confusion exists here, and the Court should rule accordingly.

**3. GNO Is Entitled To A Permanent Injunction Against Uptown**

Entry of a judgment in GNO's favor on its trademark infringement claims entitles GNO to a permanent injunction against Uptown, pursuant to 15 U.S.C. §§ 1114 and 1116. "An injunction is the usual and standard remedy once trademark infringement has been found. Consider the alternative. If a court were to award some monetary compensation and permit the infringer to continue, the result would be a kind of judicially imposed compulsory license. Such

a mandated license would permit likely confusion to continue and deprive the consuming public of a truthful marketplace." *Namer v. Broad. Bd. of Governors*, 2014 U.S. Dist. LEXIS 156876, at *53 (E.D. La. Nov. 5, 2014) (quoting J. Thomas McCarthy, 4 McCarthy on Trademarks and Unfair Competition, §23:20.50 (4th ed. 2014)).

Here, due to the likelihood of confusion caused by Uptown's use of the UPTOWN NOLA LIVING REALTY designation, GNO would be irreparably harmed by allowing Uptown to continue using the designation. *See Nat'l Urban League, Inc. v. Urban League of Greater Dall. & N. Cent. Tex., Inc.*, 2017 U.S. Dist. LEXIS 160608, at *19 (N.D. Tex. Sep. 29, 2017) ("When a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods constitutes immediate and irreparable harm."). Furthermore, the Fifth Circuit "has held that where irreparable injury is established, 'there seems little doubt that money damages are inadequate to compensate [the] owner for continuing acts of [the] infringer.'" *S. Snow Mfg. Co. v. Snowizard Holdings, Inc.*, 2014 U.S. Dist. LEXIS 57264, at *38-39 (E.D. La. Apr. 24, 2014) (quoting *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 267 (5th Cir. 2013)).

The balance of hardships also supports a permanent injunction here. Uptown has only used the UPTOWN NOLA LIVING REALTY designation since February of 2019, and "a permanent injunction will only require [Uptown] to bring their business into line with the requirements of the law." *Mary Kay, Inc. v. Weber*, 661 F. Supp. 2d 632, 640 (N.D. Tex. 2009). Yet, absent a permanent injunction, GNO "may not be able to protect its trademarks from future infringement by [Uptown] without pursing additional litigation." *S. Snow Mfg. Co.*, 2014 U.S. Dist. LEXIS 57264, at *39-40.

Finally, "the purpose of trademark law is to 'protect the ability of consumers to distinguish among competing producers.'" *Id.* at 40 (quoting *Park 'N Fly, Inc. v. Dollar Park*

*and Fly, Inc.*, 469 U.S. 189, 198 (1985)). It is therefore in the public's interest to permanently enjoin Uptown to ensure that there is no future confusion with GNO's services. Accordingly, this Court should issue a permanent injunction prohibiting Uptown from using the UPTOWN NOLA LIVING REALTY mark or any other mark that is confusingly similar.

**4. GNO Is Entitled to Damages**

Under the Lanham Act, GNO need only provide evidence of the Defendants' gross revenue, and the Defendants then have the burden of proving expenses to offset against said revenue. *See* 15 U.S.C. § 1117. Further, 15 U.S.C. § 1117 allows for a tripling of any damage calculation, as well as an award of attorneys' fees (attorneys' fees are also available under GNO's Louisiana Unfair Trade Practices claim). GNO can prove at least $76,737 in gross revenue, and Uptown has only produced documents showing $1,878 in expenses, resulting in a base damage calculation no less than of $74,859 (before GNO's attorneys' fees are even considered).

**5. The Court Should Cancel Uptown's Louisiana Trademark Registration**

This Court should order cancellation of Uptown's Louisiana trademark registration for UPTOWN NOLA REALTY because it infringes upon GNO's NOLA LIVING REALTY MARKS. Explicit grounds for such cancellation exist where "the registered mark is so similar, as to be likely to cause confusion or mistake or to deceive, to a mark registered by another person in the United States Patent Office, prior to the date of the filing of the application for registration by the registrant hereunder." La. Rev. Stat. § 51:219(3)(e). Furthermore, pursuant to La. Rev. Stat. § 51:219(5), this Court can order cancellation of a trademark registration "on any grounds." As discussed in Section B, *supra*, Uptown's use of the UPTOWN NOLA REALTY designation is likely to cause confusion with and infringes upon GNO's senior NOLA LIVING

REALTY MARKS, one of which was federally registered several years prior to the Louisiana registration of UPTOWN NOLA LIVING. Accordingly, this Court should order cancellation of Uptown's registration for UPTOWN NOLA LIVING with the Secretary of State for the State of Louisiana (Book # 69-8549).

**6. GNO's State Law Claims**

GNO has also asserted claims for Injury to Business Reputation and Trademark Dilution under La. R.S. § 51:223.1, and Unfair Trade Practices under La. R.S. § 51:1401, *et seq.* To the extent GNO is able to prove its federal trademark infringement claims, GNO will have also successfully proven these state law claims. Moreover, as noted above, GNO is also entitled to its attorneys' fees if it prevails on its Louisiana Unfair Trade Practices claims.

**7. Personal Liability of Mohamad Saleh**

It is well-settled that, because of the tortious nature of trademark infringement and unfair competition claims, individuals directly responsible for the tortious behavior of a legal entity may be held personally liable for such behavior. In this case, the Defendants have readily and unambiguously admitted that Mr. Saleh has sole operational control over Uptown. Therefore, Mr. Saleh is solidarily liable with Uptown NOLA Living Realty, LLC with regard to the claims asserted by GNO in this lawsuit.

b. <u>Defendants' Brief Summary of Material Facts</u>

Defendant, Uptown NOLA Realty, LLC, a Louisiana Real Estate broker, began operations by registering as a Louisiana limited liability company with the Louisiana Secretary of State. The Secretary of State does not allow companies with deceptively similar names to operate. Plaintiff does business as NOLA Living Realty. The Secretary of State had no problem with Plaintiff and Defendant using their respective names. Many other companies use similar

names, but none are deceptively similar with any of the others. Plaintiff has admitted to having no knowledge of any confusion to anyone when agents for both Plaintiff and Defendant appeared in the same real estate transaction.

Plaintiff claims that it has the exclusive right to the name Defendant is using because of trademark and patent law. U.S. trademark and patent law do not allow in most cases for generic or geographic names to be marked. "NOLA Living Realty" contains "NOLA," a geographic name and "Living" a generic name. "Uptown NOLA" refers to the Carrollton and/or University Section of New Orleans. "NOLA" refers to the entire New Orleans area. Again, the names have not been shown to be deceptively similar.

## VII.   UNCONTESTED MATERIAL FACTS

1.      GNO Real Estate Holdings, LLC ("GNO"), doing business as NOLA Living Realty, provides real estate marketing and sales services across the greater New Orleans metropolitan area using the trademarks "NOLA LIVING REALTY" and "NOLA REALTY" (the "NOLA LIVING REALTY MARKS").

2.      GNO owns a United States Trademark Registration for the word mark NOLA REALTY (U.S. Reg. No. 4,090,784) for "real estate brokerage," which has been used continuously since 2004 and is incontestable pursuant to Sections 8 and 15 of the Lanham Act.

3.      GNO owns Louisiana Service Mark Reg. Book # 62-2685 for the mark NOLA REALTY.

4.      All right, title and interest to the mark NOLA REALTY, including U.S. Reg. No. 4,090,784 and Louisiana Service Mark Reg. Book # 62-2685, and further including all goodwill appurtenant thereto, was assigned to GNO on May 15, 2019, and said assignment was recorded with the United States Patent and Trademark Office on May 16, 2019 at Reel: 006647 and

Frame: 0087.

5.     The Defendants received notice of GNO's rights to the mark NOLA REALTY, including the federal and Louisiana trademark registrations noted above, on July 17, 2019 via the filing of GNO's Amended Complaint.

6.     In GNO's letter dated August 14, 2019, GNO expressly explained that Defendants' refusal to reevaluate their position with regard to GNO's rights to the NOLA REALTY brand would serve as grounds to find that this is an "exceptional case" under 15 U.S.C. § 1117(a).

7.     GNO also owns the unregistered trademark NOLA LIVING REALTY, which GNO has used continuously in connection with its real estate sales and marketing services since as early as December of 2014.

8.     On August 7, 2019, GNO filed two federal applications to register its NOLA LIVING REALTY mark with the United States Patent and Trademark Office (USPTO) – namely, U.S. Federal Trademark App. Nos. 88/570,663 (logo) and 88/570,478 (standard character mark) (collectively, the NOLA LIVING REALTY Applications). Both NOLA LIVING REALTY Applications published on December 24, 2019.

9.     The thirty-day Opposition period associated with the publication of the NOLA LIVING REALTY Applications has concluded, and no third-party Oppositions have been filed with the USPTO during said Opposition period.

10.     GNO uses the NOLA LIVING REALTY Marks to advertise and market its real estate sales and marketing services across a wide variety of media, including its own website, social media, yard signs, and websites that aggregate real estate listings provided by numerous brokerages.

11.     GNO markets its services to buyers and sellers of residential real estate in New Orleans using NOLA LIVING REALTY MARKS.

12.     GNO has devoted substantial time, money and labor to the development, enhancement, expansion, advertisement, promotion, and marketing of GNO's services and product lines in connection with NOLA LIVING REALTY MARKS.

13.     Since 2015, the NOLA LIVING REALTY MARKS have been used in connection with the sale of hundreds of millions of dollars in real estate increasing GNO's market share by more than four hundred fifty percent (450%).

14.     On February 5, 2019, Uptown NOLA Living Realty, LLC ("Uptown") was organized as Louisiana limited liability company and registered the word mark UPTOWN NOLA LIVING with the Secretary of State for the State of Louisiana (Book # 69-8549).

15.     Mohamad Saleh is the sole principal of Uptown and is the only person with operational control of Uptown.

16.     Uptown first used the UPTOWN NOLA LIVING mark on February 5, 2019, and Uptown has used the mark UPTOWN NOLA LIVING REALTY in commerce since February 5, 2019.

17.     Uptown uses the designation UPTOWN NOLA LIVING REALTY to advertise and market brokerage services for real estate located in the New Orleans metropolitan area.

18.     Uptown uses the designation UPTOWN NOLA LIVING REALTY when marketing and offering its services via social media, the Craigslist website, and other websites that aggregate real estate listings provided by numerous brokerages.

19.     Uptown markets its services to buyers and sellers of residential real estate in New Orleans using the designation UPTOWN NOLA LIVING REALTY.

20.     GNO's use of the marks NOLA REALTY and NOLA LIVING REALTY predates the Defendants' use of the mark UPTOWN NOLA LIVING REALTY.

21.     As of the date of this Order, Uptown has generated at least $76,737 in gross revenue in connection with real estate brokerage services offered under the designation UPTOWN NOLA LIVING REALTY.

22.     Defendants were notified of the existence of GNO's pending U.S. federal trademark application nos. 88/570,663 (logo) and 88/570,478 (standard character mark), as well as the fact that said applications were scheduled to publish on December 24, 2019, on or about December 10, 2019, the date on which GNO served its Preliminary Status Conference Report on both the Court and the Defendants.

## VIII.  CONTESTED ISSUES OF FACT

1.  Uptown NOLA Living Realty, LLC provided real estate sales services mostly in Uptown New Orleans.

2.  Uptown NOLA Living Realty, LLC owns a Louisiana Secretary of State registered trademark for its name.

3.  Uptown NOLA Living Realty, LLC does not advertise its services in a wide market.

4.  Uptown NOLA Living Realty, LLC mostly markets to a customer base limited to those that it has a previous relationship with.

5.  Uptown NOLA Limited Realty, LLC received no notice as to Plaintiff's application for Federal marks under the name "NOLA Living Realty" to allow for opposition to Plaintiff's application.

6. The parties using the services of Plaintiff and Defendant have had no confusion, even when representatives of both appeared in the same transaction as to whether they were dealing with Plaintiff or Defendant.

7. Plaintiff has trademarked the name "NOLA Living Realty" after Defendant Uptown NOLA Living Realty, LLC used the name Uptown NOLA Living Realty in its business.

8. The names "NOLA Living Realty" and "Uptown NOLA Living Realty" are in fact not deceptively similar.

9. Plaintiff does not market or do business under the name "Uptown NOLA Living Realty."

10. Plaintiff using the name "NOLA Living Realty" does not have a significant market share of the real estate business in the New Orleans area.

11. The Lanham Act, 15 U.S.C. Section 1051, et seq. does not declare the use of names that are patented or trademarked to be "uncontestable" despite the claims of Plaintiff.

12. The Louisiana Secretary of State has allowed numerous entities to use similar names to those used by both Plaintiff and Defendant and Defendant has not protected its claimed exclusive right to the name "NOLA Living Realty" when it has not opposed the following non-exclusive use of names: Uptown Living, Inc.; NOLA Living, Inc.; NOLA Living ii, Inc.; NOLA Living Title, LLC; Living NOLA Investments, LLC; Now that's NOLA Living; Uptown NOLA Living; Crescent City Living, LLC; Downtown Living, LLC; Uptown Realty, LLC; Uptown Realty, Ltd; Uptown Realty Management, LLC; Uptown NOLA Investments, LLC; Bikram Nola Uptown, LLC; Nolasco Uptown Holdings, LLC; RSC Uptown Nola, Inc.; Nola Real Estate, LLC;

Nola Realty; Nola Real Estate Acquisitions, LLC; Nola Realty Co, Ltd.; Nola Realty & Development, LLC; Nola Realty Direct; Nola Real Estate 4-U, LLC; Nola Real Estate Group; Nola Realty Group, LLC; Nola Realty, LLC; Nola Real Estate Investments, LLC; Nola Realty; Nola Real Estate Management, LLC; Nola Real Estate Marketing, LLC; Nola Real Estate Partners, LLC; Nola Real Estate Properties, LLC; Nola Real Estate Purchasing, LLC; Nola Real Estate Services, LLC; Nola Realty 2000, LLC; Nola Choice Realty, LLC; Nola Dream Real Estate Investments; Nola Essential Realty, LLC; Nola Home Realty, LLC; Nola Homes Realty, LLC; Nola Java Realty, LLC; Nola North Realty, LLC; Nola Renovations & Real Estate, Inc.; Nolagirl Realty, LLC; Armstrong Nola Real Estate, LLC; Cja Nola Realty, LLC; Cna Nola Realty, LLC; Dk Nola Realty, LLC; Dwell Nola Realty; Exit Nola Premiere Realty; Fortier Real Estate Nola, F; Geaux Nola Realty, LLC; Greater Nola Realty, LLC; Huger Jones & Lane, d/b/a Nola Realty; Journey Real Estate- Breg, LLC, d/b/a Realty Point Nola; Kdk Nola Regional Realty; La Nola Real Estate Services, LLC; List Nola Realty, LLC; Mb Nola Real Estate, LLC; Prestige Nola Realty, LLC; Realty Executives NOLA; Realty Group Nola, LLC; Realty Point Nola, LLC; S&S Nola Realty; Snap Realty Nola; and Wall Nola, LLC.

13. With so many similar named entities doing business in the same New Orleans area as Plaintiff and Defendant, Defendant contests whether Plaintiff can show any damage from the business operations of Defendant, especially when Plaintiff has admitted that there has been no confusion caused to the public by the names of Plaintiff and Defendant, even when Nola Living Realty and Uptown Nola Living Realty, LLC have appeared in the same transaction.

14. The services offered by GNO and Uptown are essentially identical, the individuals using said services are essentially the same people (namely, people buying and selling residential real estate), and the parties advertise in the same channels and using the same methods.

## IX. CONTESTED ISSUES OF LAW[3]

1. GNO's Lanham Act Claim for Trademark Infringement (15 U.S.C. § 1125)

   a. Whether the use of the mark UPTOWN NOLA LIVING REALTY is likely to cause confusion with the mark NOLA LIVING REALTY.

   b. Whether GNO is entitled to damages under 15 U.S.C. § 1117(a).

   c. Whether GNO is entitled to enhanced damages under 15 U.S.C. § 1117(a).

   d. Whether GNO is entitled to its attorneys' fees under the "exceptional case" provision of 15 U.S.C. § 1117(a).

   e. Whether GNO is entitled to injunctive relief.

2. GNO's Lanham Act Claim for Trademark Infringement (15 U.S.C. § 1114)

   a. Whether the use of the mark UPTOWN NOLA LIVING REALTY is likely to cause confusion with the mark NOLA REALTY.

   b. Whether GNO is entitled to damages under 15 U.S.C. § 1117(a).

   c. Whether GNO is entitled to enhanced damages under 15 U.S.C. § 1117(a).

   d. Whether GNO is entitled to its attorneys' fees under the "exceptional case" provision of 15 U.S.C. § 1117(a).

   e. Whether GNO is entitled to injunctive relief.

[3] To the extent any identified issue of law is more appropriately considered an issue of fact, it should be considered and treated as a contested issue of fact.

3. GNO's Claim of Injury to Business Reputation and Trademark Dilution under La. R.S. § 51:223.1

   a. Whether the Defendants' use of the mark UPTOWN NOLA LIVING REALTY creates a likelihood of injury to GNO's business reputation or of dilution of the distinctive quality of GNO's NOLA LIVING REALTY and NOLA REALTY marks.

   b. Whether GNO is entitled to damages.

   c. Whether GNO is entitled to recover its attorneys' fees and costs.

   d. Whether GNO is entitled to injunctive relief.

4. GNO's Claim of Unfair Trade Practices under La. R.S. § 51:1401, *et seq.*

   a. Whether Uptown's use of the mark UPTOWN NOLA LIVING REALTY constitutes an unfair trade practice under the Louisiana Unfair Trade Practices Act.

   b. Whether GNO is entitled to damages.

   c. Whether GNO is entitled to recover its attorneys' fees and costs.

   d. Whether GNO is entitled to injunctive relief.

5. GNO's Request to Cancel the UPTOWN NOLA LIVING State Trademark Registration

   a. Whether GNO is entitled to cancellation of the UPTOWN NOLA LIVING Louisiana trademark registration pursuant to La. R.S. 51:219.

6. Liability of Mohamad Saleh

   a. Whether Mohamad Saleh is solidarily liable with Uptown for the various claims asserted against Uptown in this lawsuit.

7. Whether the U. S. Patent and Trademark Office can mark a name that is geographic and generic as opposed to specific. (See TMEP Sec. 1201)

8. Whether any action can be brought by Plaintiff under Title 51 of the Louisiana Revised Statues when the Louisiana Attorney General has not first found complained of practices

of Defendant to be in fact unfair trade practices in accord with the contents of Title 51 itself.

9. Whether the Lantham Act provides for uncontesable liability when no showing has been made or alleged that there has in fact been confusion caused to the general public due to the existence of Nola Living Realty and Uptown Nola Living Realty, LLC.

## IV. EXHIBIT LIST

1. GNO's List of Exhibits

   a. Copy of Louisiana Secretary of State Registration Book #68-8549. Doc. No. GNO000064.

   b. Copy of Facebook Page of Kaitlyn Demoran displaying mark UPTOWN NOLA LIVING REALTY (associated with Facebook ID "@kaitlyndemoranrealtor"). Doc. No. GNO000067 - GNO000069.

   c. Copies of real estate listings from the website Craigslist. Doc. No. GNO000073 - GNO000075.

   d. Copy of United States Patent and Trademark Office Trademark Reg. Cert. No. 4,090,784 (NOLA REALTY). Doc. No. GNO000065 - GNO000066.

   e. Copy of the proof of recordation of that certain assignment transferring U.S. Trademark Reg. No. 4,090,784 to GNO together with a copy of said assignment. Doc. No. GNO000070 - GNO000072.

   f. Copies of the Section 8 and Section 15 Declarations filed with the USPTO in connection with U.S. Trademark Reg. No. 4,090,784. Doc. No. GNO000076 - GNO000099.

g. Copies of representative examples of GNO's use in commerce of its NOLA REALTY and NOLA LIVING REALTY marks. Doc. Nos. GNO00063; GNO00100 – GNO00102; GNO00107 – GNO00111; GNO00113.

h. Copy of the assignment of the Louisiana Trademark Registration of NOLA REALTY to GNO. Doc. No. GNO00103 – GNO00106.

i. Copy of U.S. Trademark App. No. 88/570,663, including a copy of the Notice of Publication of said Application. Doc. Nos. GNO00114 – GNO00127.

j. Copy of U.S. Trademark App. No. 88/570,478, including a copy of the Notice of Publication of said Application. Doc. Nos. GNO00128 – GNO00140.

k. Certain documents produced by Defendants related to sales made by Defendants. Doc. Nos. UNR-000001 – UNR-000174; UNR-000311 – UNR-000393; UNR-000394 – UNR-000483; UNR-000500 – UNR-000515; UNR-000525 – UNR-000545.

l. Copies of documents related to certain real estate transactions involving Defendants. Doc. Nos. GNO1 – GNO23; GNO00037 – GNO00043; GNO00047 – GNO00054; GNO00055 – GNO00062.

m. Copies of MLS summary reports. Doc. Nos. GNO00026 – GNO00036.

n. Copy of letter dated August 14, 2019 from counsel for GNO to counsel for Defendants. Doc. Nos. GNO00024 – GNO00025.

o. Copies of P&L Statements of GNO for 2017 – 2019. Doc. Nos. GNO00044 – GNO00046.

p. Copy of representative example of Defendants' yard sign. Doc. No. GNO00112.

2. Defendants' List of Exhibits[4]

a. Organizational documents of Uptown NOLA Living Realty, LLC with the Louisiana Secretary of State including Registration of limited liability company.

b. Louisiana registration of Uptown NOLA Living Realty, LLC mark.

c. Record(s) of real estate transactions involving Defendant including those wherein agents for Plaintiff and Defendant have appeared in the same transaction.

d. Correspondence from Plaintiff's attorney other than items that are privileged.

e. Any item produced by any other party to this litigation.[5]

f. Business records of Uptown NOLA Living Realty, LLC including the above mentioned real estate sale related documents.[6]

## V. DEPOSITION TESTIMONY

None.

[4] GNO generally objects to Defendants' list of exhibits to the extent it is unclear what specific documents Defendants are referring to. GNO has asked Defendants to refer to the documents listed by Bates numbers, but Defendants have thus far not provided this information. GNO cannot make specific objections regarding the listed exhibits until they are specifically identified by Defendants.

[5] GNO objects to this broad and vague listing.

[6] GNO objects to this broad and vague listing.

## VI. DEMONSTRATIVE EVIDENCE: CHARTS, GRAPHS, MODELS

a. GNO's Demonstrative Evidence

GNO may use enlargements and/or graphic displays and/or highlights of certain exhibits introduced in this trial.

b. Defendants' Demonstrative Evidence

Uptown Nola Living Realty, LLC may use enlargements and/or graphic displays and/or highlights of certain exhibits introduced in this trial.

## VII. WITNESSES

Each party timely filed a witness list in accordance with the Court's Scheduling Order

a. GNO's List of Witnesses

i. Celso "Eric" Hernandez (will call)
May be contacted through counsel of record.

Mr. Hernandez is the founder and sole member of GNO Real Estate Holdings, LLC. He will testify regarding: (a) GNO business operations; (b) GNO's trademark rights, (c) GNO's use of its trademarks in commerce; and, (d) Defendants' infringing activities.

ii. Marc S. Katsanis (will call)
Chaffe & Associates
201 St. Charles Ave., Ste. 1410
New Orleans, LA 70170

Mr. Katsanis will provide expert testimony in support of GNO's request for damages.

iii. Jessica Gorman (may call)
May be contacted through counsel of record.

Ms. Gorman is an employee of GNO. If called, she will testify regarding GNO's use of the trademarks at issue in the context of GNO's marketing and promotional efforts.

iv. GNO reserves the right to call rebuttal witnesses.

    b. Defendants' List of Witnesses[7]

i. Mohamad Saleh, member/ manager of Uptown NOLA Living Realty, LLC. He will testify concerning the formation of Uptown NOLA Living Realty, LLC, its business operations, its use of its mark in commerce and the fact that he had no knowledge of the existence of Plaintiff until contacted by Plaintiff's attorney following the commencement of business operations.

ii. Kaitlyn Demoran,[8] manager and real estate agent with Uptown NOLA Living Realty, LLC.

iii. Nidal Jaber.[9] Nidal Jaber is a business partner of Mohamad Saleh in ventures other than Uptown NOLA Living Realty, LLC. Mr. Jaber is not a member of Uptown NOLA Living Realty, LLC. Mr. Jaber has served as agent/representative for Mohamad Saleh for the convenience of Mohamad Saleh as to his interests in Uptown NOLA Living Realty, LLC, and for his other business ventures in New Orleans.

iv. Pamela Hatheway Person. Mandate for Mohamad Saleh. Ms. Person is familiar with the formation and activity of Uptown NOLA Living Realty, LLC.

---

[7] GNO generally objects to Defendants' entire witness list to the extent it lacks "an indication in good faith of those who will be called in the absence of reasonable notice to opposing counsel to the contrary" as required by the Pre-Trial Notice (Rec. Doc. 33-1).

[8] GNO objects to the listing of Ms. Demoran to the extent Defendants have failed to include a "statement of the general subject matter" of her testimony as required by the Pre-Trial Notice (Rec. Doc. 33-1).

[9] GNO objects to the listing of Mr. Jaber, as while a description of Mr. Jaber's relationship to Defendants is provided, Defendants fail to provide a "statement of the general subject matter" of his testimony as required by the Pre-Trial Notice (Rec. Doc. 33-1).

     v.    Mufid Thabatah,[10] a frequent customer of Uptown NOLA Living Realty, LLC and familiar with its operations.

     vi.    Omar Alas,[11] a frequent customer of Uptown NOLA Living Realty, LLC and familiar with its operations.

     vii.    Ehab Jabr,[12] a customer of Uptown NOLA Living Realty, LLC and familiar with its operations.

     viii.    Any witness called by any other party

## VIII.  BENCH TRIAL

All aspects of this case will be tried before the Court. Proposed findings of fact (with annotated references of support for each proposed finding) and conclusions of law (with citations of authority), set forth in separate documents, will be filed not less than ten (10) full working days prior to trial.

## IX.  BIFURCATION OF JURY TRIAL

The issue of liability will not be tried separately from that of quantum.

## X.  STATEMENT OF ANY MATTERS WHICH COULD EXPEDITE CASE

A decision on GNO's pending Motion for Summary Judgment would cut to the heart of this case, and if granted, would eliminate the need for a full trial on this matter.

---

[10] GNO objects to the listing of Mr. Thabatah, as Defendants fail to provide a "statement of the general subject matter" of his testimony as required by the Pre-Trial Notice (Rec. Doc. 33-1). Moreover, based on Defendants' description of Mr. Thabatah as a mere "customer" of Uptown, it is unclear what he might testify on based on his personal knowledge.

[11] GNO objects to the listing of Mr. Alas, as Defendants fail to provide a "statement of the general subject matter" of his testimony as required by the Pre-Trial Notice (Rec. Doc. 33-1). Moreover, based on Defendants' description of Mr. Alas as a mere "customer" of Uptown, it is unclear what he might testify on based on his personal knowledge.

[12] GNO objects to the listing of Mr. Jabr, as Defendants fail to provide a "statement of the general subject matter" of his testimony as required by the Pre-Trial Notice (Rec. Doc. 33-1). Moreover, based on Defendants' description of Mr. Jabr as a mere "customer" of Uptown, it is unclear what he might testify to based on his personal knowledge.

**XI. TRIAL**

Trial shall commence on March 2, 2020 at 9:00 a.m. The parties estimate that trial will not take longer than three (3) days.

**XII. PRE-TRIAL ORDER**

This pre-trial order has been formulated after conference at which counsel for the respective parties have appeared in person. Reasonable opportunity has been afforded counsel for corrections or additions prior to signing. Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

**XIII. SETTLEMENT**

Possibility of settlement of this case was considered.

**NEW ORLEANS, LOUISIANA,** this 5th day of February, 2020.

Respectfully submitted:

/s/ Eric Oliver Person
Eric Oliver Person
1539 Jackson Avenue, Suite 100
New Orleans, Louisiana 70130
Telephone: (504) 561-8612
Fax: (504) 561-8615
eric@eoplaw.net
*Counsel for Defendants, Uptown NOLA Living Realty, LLC and Mohamad Saleh.*

/s/ Ian C. Barras
Ian C. Barras
Gregory D. Latham
Kent Barnett
Intellectual Property Consulting, LLC
334 Carondelet St., Suite B
New Orleans, Louisiana 70130
Telephone: (504) 322-7166
Facsimile: (504) 322-7184
ibarras@iplawconsulting.com
glatham@iplawconsulting.com
kbarnette@iplawconsulting.com
*Counsel for Plaintiff, GNO Real Estate Holdings, LLC.*

SIGNED this _____ day of February, 2020.

______________________________
**JUDGE WENDY B. VITTER**