# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GNO REAL ESTATE HOLDINGS, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-1849** |
| **UPTOWN NOLA LIVING REALTY, LLC** | **SECTION D (5)** |

## ORDER

This Order resolves Plaintiff GNO Real Estate Holdings, LLC's Motion for an Order Holding Defendants In Civil Contempt For Their Violation of The Court's Final Order[1] and Plaintiff's subsequent Motion for Attorney's Fees.[2]

On February 28, 2019, GNO Real Estate Holdings filed a Complaint against Uptown NOLA Living Realty, alleging Defendant was infringing on GNO's trademarks, as GNO does business as NOLA Living Realty.[3] Uptown NOLA Living Realty was run by Defendant Mohamad Saleh. The case settled on February 19, 2020.[4] Subsequently, the Court issued an order dismissing the case pursuant to the Settlement Agreement.[5] The order required that "[t]he parties shall carry out each and every one of their respective obligations and duties under the Settlement Agreement."[6] The settlement agreement required, among other things, that on or before the transition date, Defendants (1) cancel the Louisiana Trademark Reg. Book

---

[1] R. Doc. 85.
[2] R. Doc. 106.
[3] R. Doc. 1.
[4] R. Doc. 78.
[5] R. Doc. 84.
[6] *Id.*

No. 69-8549 for the mark UPTOWN NOLA LIVING, (2) change the corporate name of Uptown Nola Living Realty, LLC, (3) destroy any marketing literature, signage, or other materials bearing the UPTOWN marks, (4) remove the UPTOWN marks from electronic platforms, and (5) take any other administrative steps necessary to cease any and all use of the UPTOWN marks by Defendants.[7]  The transition date in question was set by the settlement agreement as 90 days after the effective date, or July 21, 2020.[8]

On August 17, 2020, Plaintiff filed a Motion for an Order Holding Defendants in Civil Contempt.[9]  The thrust of the Motion was that Defendants had done little if anything to comply with their obligations.  Plaintiff noted that Defendants had not cancelled their trademark, still had units for sale under the UPTOWN name, and have not changed their name with the Secretary of State or Louisiana Real Estate Commission.  Plaintiff sought $25,000 as the penalty for failure to comply.  Defendant filed an Opposition to the Motion, arguing it had substantially complied with the Settlement Agreement and Court Order, but had been hampered in fully complying by the COVID-19 pandemic.[10]  The parties filed supplemental briefing in which Defendants contended they made further steps to comply, and Plaintiff contended that Defendants had still not fully complied.[11]

---

[7] R. Doc. 85-3 at 4.
[8] *Id.*
[9] R. Doc. 85.
[10] R. Doc. 87.
[11] R. Docs. 89, 91, 95, and 98.

On October 22, 2020, the Court held a hearing on the Motion to hold Defendants in Civil Contempt.[12]  The evidence adduced during the hearing reflected that Defendant still had not complied with all of the terms of the settlement as of the hearing date.  After hearing evidence from both sides, the Court granted Plaintiff's Motion and held Defendants in contempt for failure to comply with the Court's order. The Court noted that it would hold Defendants responsible for Plaintiff's attorney's fees associated with the contempt motion, and would withhold a decision on the amount it would levy on Defendants as a result of the contempt order.

Plaintiff later filed a Motion to Award Attorneys Fees in the amount of $10,944.90.[13]  Defendants filed an Opposition to the Motion,[14] in which they contend that the amount of time Plaintiff's attorneys spent on certain items they have billed for, such as internal conferences, is excessive.  Defendants also argue that the number of lawyers billed for certain tasks is unreasonable.

A Court has broad discretion in fashioning a reasonable attorney's fee and is reviewable only for abuse of discretion, and therefore will not be reversed if there is strong evidence that the award is excessive or inadequate, or that the amount chosen is clearly erroneous.[15]  In order to determine a reasonable fee, the Court must provide a concise but clear explanation of its reasons for the fee award, and must determine

---

[12] R. Doc. 105.
[13] R. Doc. 106.
[14] R. Doc. 109.
[15] *Hopwood v. State of Tex.*, 236 F.3d 256, 277 n.79 (5th Cir. 2000).

3

whether the hourly rate is reasonable and whether the tasks reported by counsel seeking the award are duplicative or unnecessary.[16]

To assess the reasonableness of an attorney's fees award, the Court must first determine the "lodestar," which is reached by multiplying the reasonable number of hours expended and the reasonable hourly rate for each participating attorney.[17] Plaintiff's counsel has provided an affidavit outlining the rates of attorneys involved in this matter; they range from $60 for the hourly work of a legal assistant to $290 for the hourly work of a managing member of the firm.[18]  Here, Defendants do not contest the reasonableness of Plaintiff's counsels' hourly rates.  Indeed, the Court finds these rates are reasonable.[19]

The remaining question is whether a reasonable number of hours were expended by Plaintiff's counsel in litigating the Contempt Motion.  Plaintiff claims a total of 44.65 hours, at various rates.[20]  Here, Defendants do raise concerns. Specifically, Defendants argue that the number of hours spent on certain tasks exceeds what is reasonable or involved more attorneys than were reasonably necessary.

The Court finds that Defendants' arguments have merits, and the Court will therefore apply an overall reduction of twenty percent to the amount Plaintiff seeks

---

[16] *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Associated Builders and Contractors of La. v. Orleans Parish School Bd.*, 919 F.3d 374, 379 (5th Cir. 1990).

[17] *Hensley*, 461 U.S. at 433; *see also Green v. Administrators of the Tulane Educ. Fund*, 284 F.3d 642, 661 (5th Cir. 2002).

[18] *See* R. Doc. 106-1.

[19] *See Alliance for Good Govt. v. Coalition for Better Govt.*, No. 17-3679, 2018 WL 3094069, at 4 (E.D. La. June 26, 2018) (finding the rates of Intellectual Property Consulting, LLC reasonable), *reversed in part on other grounds,* 919 F.3d 291.

[20] R. Doc. 106-1.

in attorney's fees.   The Court outlines some examples of why this reduction is warranted.   Plaintiff's counsel accounted 3.5 hours, at a rate of $275 per hour, for participation in the Court's status conference.[21] But the status conference lasted less than an hour and a half.[22]   Plaintiff's counsel also bills for over fourteen hours for preparation for its Motion for Contempt.[23]   The memorandum in support of that motion was only eleven pages, and contained large parts copied and pasted from the Settlement Agreement.[24]   The Court therefore finds a reduction of twenty-percent of the total amount sought, or a $2188.98 reduction, warranted.   The Court will therefore award attorney's fees to Plaintiff in the amount of $8755.92.

Further, the Court held Defendants in contempt at the October 22, 2020 hearing.[25]   A movant in a civil contempt proceeding must establish "(1) that a court order was in effect, (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order."[26]   Here, as the Court found at the hearing, these factors are met.   The Court's Order was in effect,[27] the order required Defendants to comply with all aspects of the Settlement Agreement,[28] and as of the transition date, Plaintiff had not done so.   Specifically, Plaintiff had not yet dissolved its trademark, changed its name with the LREC, and still used the mark

---

[21] *See* R. Doc. 106-1 at 4.
[22] R. Doc. 105.
[23] *See* R. Doc. 106-1 at 3.
[24] *See generally* R. Doc. 85-1.
[25] R. Doc. 105.
[26] *Martin v. Trinity Indus. Inc.*, 959 F.2d 45, 47 (5th Cir. 1992).
[27] R. Doc. 84.
[28] *See id.*

in certain activities, such as in email addresses and in listings.[29]  Many of these items remained pending during the October contempt hearing.  The Court further found the excuses offered by Defendants for the delay were not reasonable.

"[T]he factors to be considered in imposing civil contempt sanctions are: (1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose; and (4) the willfulness of the contemnor in disregarding the court's order."[30]  The Court has considered each of those factors here.  The Court specifically finds that Plaintiff was harmed by Defendants' failure to comply with the Settlement Agreement, as the continued use of the mark can cause confusion.  The Court finds that a sanction would be effective, as it appears only a threat of a sanction forced the Defendants to finally comply with the Settlement Agreement and the Court's Order.  Moreover, the Court does not credit the excuses offered by Defendants, and finds Defendants' failure to comply with the Court's order willful.  Specifically, at the hearing, the Court did not find Mohamad Saleh credible, nor did it find that he took appropriate steps to comply with the Settlement Agreement until after Plaintiff filed its Motion for Contempt. The Court further found that Defendants' delay cost judicial resources.  Finally, in crafting an appropriate sanction, the Court considers the financial resources of Defendants and thus imposes a sanction well below what Plaintiff seeks.

---

[29] The Court notes that Defendants took material steps to comply with the Settlement Agreement *after* the Motion for Contempt was filed.  But even as of the time of the hearing, Defendants had not entirely complied with the Settlement Agreement or this Court's order.
[30] *Lamar Financial Corp. v. Adams*, 918 F.2d 564, 567 (5th Cir. 1990).

To craft the appropriate sum for sanctions, the Court considers the amount of time it has spent dealing with Defendants' violation of the Court's order. Another court in this district has found an hour of the Court's time is with $1,650, based on a study adopted by numerous courts.[31] This Court therefore similarly finds that an hour of its time is worth $1,650. Here, the hearing the Court held was approximately an hour and a half.[32] Therefore, although the Court spent a great deal more time on this matter than only the times spent during the hearing, it will assess a sanction of $2,475, equivalent to an hour and a half of the Court's time.[33] This sanction is compensatory in nature, and should therefore be paid to Plaintiff.[34]

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Attorney's Fees is **GRANTED IN PART**. **IT IS FURTHER ORDERED** that a sanction of $2,475 is levied on Defendants for violation the Court's April 29, 2020 order, and shall be paid to Plaintiff.

New Orleans, Louisiana, November 13, 2020.

**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**

---

[31] *See Kidwell v. Ruby IV, L.L.C.*, No. 18-0252, 2020 WL 6391260, at *9 (E.D. La. Nov. 2, 2020); *see also Nogess v. Poydras Cntr.*, No. 16-15227, 2017 WL 396307, at *14-15 (E.D. La. Jan. 30, 2017).
[32] *See* R. Doc. 105.
[33] To the extent Defendant Uptown Nola Living Realty is dissolved and lacks funds, this sanction is levied solely on Defendant Saleh, who controlled Uptown Nola Living Realty.
[34] *See American Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000).